**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUY L. DAVIS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> *Defendants.* | Case No.: 1:22-cv-00829-RDM |
| SALLY CHAND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> *Defendants.* | Case No.: 1:22-cv-00830-RDM |

**MEMORANDUM OF LAW IN SUPPORT OF THE MTN DEFENDANTS'
MOTION TO TRANSFER VENUE TO THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    The Anti-Terrorism Act ............................................................... 2

    B.    *Zobay v. MTN Grp. Ltd.* (E.D.N.Y.) ....................................... 4

    C.    *Davis v. MTN Irancell* and *Chand v. MTN Irancell* (D.D.C.) ................ 8

ARGUMENT ..................................................................................................... 11

I.    These Cases Could Have Been Brought in the Eastern District of New York to the Same Extent That They Can Be Brought in This District. .................................. 12

II.    Transfer to the Eastern District of New York Is in the Interest of Justice and Would Serve the Convenience of the Parties and Witnesses............................. 14

    A.    The Interest of Justice Heavily Favors Transfer Because There Is a Materially Identical Case Pending in the Eastern District of New York. ............. 15

    B.    This Case Has No Significant Ties to the District of Columbia — and, According to the Complaints Themselves, Greater Ties to New York. ............... 21

    C.    Plaintiffs' Choice of Venue Should be Afforded No Deference in Light of the Tiny Fraction of Plaintiffs Who Reside in D.C. and Plaintiffs' Counsel's Transparent Forum Shopping. ........................................... 24

CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barham v. UBS Fin. Servs.*,
  496 F. Supp. 2d 174 (D.D.C. 2007) .........................................................................15, 16, 24

*Blechman v. Ideal Health, Inc.*,
  668 F. Supp. 2d 399 (E.D.N.Y. 2009) ...........................................................................14, 15

Burnett v. Al Baraka Inv. & Dev. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003) .........................................................................................12

Cain v. Twitter, Inc.,
  2017 WL 1489220 (S.D.N.Y. Apr. 25, 2017).................................................................15, 16

*Calif. Farm Bureau Fed'n v. Badgley*,
  2005 WL 1532718 (D.D.C. June 29, 2005).............................................................16, 19, 20

Chicken Kitchen USA, LLC v. Tyson Foods, Inc.,
  2017 WL 6760811 (S.D. Fla. Oct. 4, 2017).........................................................................17

Cont'l Grain Co. v. Barge FBL-585,
  364 U.S. 19 (1960).................................................................................................................2, 15

*Coultman v. Nat'l R.R. Passenger Corp.*,
  857 F. Supp. 231 (E.D.N.Y. 1994) .......................................................................16, 17, 18

Cung Le v. Zuffa, LLC,
  108 F. Supp. 3d 768 (N.D. Cal. 2015) .................................................................................24

Dardana Ltd. v. A.O. Yuganskneftegaz,
  317 F.3d 202 (2d Cir. 2003)....................................................................................................14

Debellis v. Soloman,
  2019 WL 4393652 (E.D.N.Y. Sept. 13, 2019) ....................................................................24

*Defenders of Wildlife v. Jewel*,
  74 F. Supp. 3d 77 (D.D.C. 2014) ...........................................................................................19

Douglas v. Chariots for Hire,
  918 F. Supp. 2d 24 (D.D.C. 2013) .........................................................................................15

*Authorities upon which the MTN Defendants chiefly rely are marked with asterisks.

*EasyWeb Innovations, LLC v. Facebook, Inc.*,
   888 F. Supp. 2d 342 (E.D.N.Y. 2012) ................................................................25

*\*Fitbit, Inc. v. Koninklijke Philips N.V.*,
   336 F.R.D. 574 (N.D. Cal. 2020) .......................................................................13

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ...............................................................................2

*Harris Cty. v. CarMax Auto Superstores Inc.*,
   177 F.3d 306 (5th Cir. 1999) ............................................................................16

*Holland v. A.T. Massey Coal*,
   360 F. Supp. 2d 72 (D.D.C. 2004) ...............................................................15, 24

*Lihuan Wang v. Phoenix Satellite Television US, Inc.*,
   2014 WL 116220 (S.D.N.Y. Jan. 13, 2014) ............................................16, 17, 20

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ............................................................................14

*Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*,
   358 F. Supp. 3d 1 (D.D.C. 2019) ......................................................................20

*\*Martinez v. Deutsche Bank AG*,
   2017 WL 1366048 (S.D. Ill. Apr. 12, 2017)...........................................21, 22, 23, 24

*Onyeneho v. Allstate Ins. Co.*,
   466 F. Supp. 2d 1 (D.D.C. 2006) .................................................................14, 15

*\*Orbital Australia Pty Ltd v. Daimler AG*,
   2015 WL 4042178 (E.D. Va. July 1, 2015) .........................................................13

*Owens v. BNP Paribas, S.A.*,
   897 F.3d 266 (D.C. Cir. 2018) ...........................................................................3

*Reiffin v. Microsoft Corp.*,
   104 F. Supp. 2d 48 (D.D.C. 2000) .....................................................................19

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)................................................................................3

*\*Schmid Labs., Inc. v. Hartford Acc. & Indem. Co.*,
   654 F. Supp. 734 (D.D.C. 1986).................................................................25, 26

*Tower Labs., Ltd. v. Lush Cosmetics Ltd.*,
   285 F. Supp. 3d 321 (D.D.C. 2018) ...................................................................24

iii

*Trout Unlimited v. U.S. Dep't of Agric.*,
   944 F. Supp. 13 (D.D.C. 1996) ...................................................................15, 24, 25

*In re Vicor Corp.*,
   493 F. App'x 59 (Fed. Cir. 2012) ..............................................................................16

*Virts v. Prudential Life Ins. Co. of Am.*,
   950 F. Supp. 2d 101 (D.D.C. 2013) ...........................................................................13

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................................................14

**Statutes**

18 U.S.C. § 2331(1) ...........................................................................................................3

18 U.S.C. § 2333(a) ...............................................................................................2, 3, 18

18 U.S.C. § 2333(d)(2) ...............................................................................................3, 18

18 U.S.C. § 2334 .............................................................................................................12

18 U.S.C. § 2334(a) .........................................................................................................12

*28 U.S.C. § 1404(a) ............................................................................................... *passim*

Justice Against Sponsors of Terrorism Act,
   Pub. L. No. 114-222, 130 Stat. 852 (2016) ................................................................3

**Rules**

Fed. R. Civ. P. 4(k)(2) .....................................................................................................14

LCvR 40.5(a)(3) ...............................................................................................................10

LCvR 40.5(b)(3) ...............................................................................................................10

**Other Sources**

Wright & Miller, 15 Fed. Prac. &  Proc. Juris. § 3854 (4th ed.) (Westlaw) ..................20

## INTRODUCTION

Plaintiffs have filed two nearly identical cases in this District—*Davis v. MTN Irancell* and *Chand v. MTN Irancell*—both of which include large swaths of allegations that are copied verbatim from a materially identical suit that the same counsel filed in the Eastern District of New York nearly a year ago. *See Zobay v. MTN Grp. Ltd.*, No. 1:21-cv-03503 (E.D.N.Y.). This Court recently concluded that, given the substantial overlap in factual allegations between *Davis* and *Chand*, "judicial economy would be served by having these matters resolved by the same judge." Minute Order, *Davis v. MTN Irancell Telecomms. Servs. Co.*, 1:22-cv-00829 (D.D.C. May 13, 2022) (citation omitted). Given how closely *Davis* and *Chand* copy the allegations in *Zobay*, judicial economy would similarly be served by transferring these two actions to the Court where *Zobay* is pending, so that all three cases can be "resolved by the same judge." *Id.*

All three cases are brought by the same counsel under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333. All three cases seek to hold MTN Group—a company that is Africa's largest mobile phone company and that has no U.S. operations—liable for tragic battlefield deaths or injuries sustained by U.S. servicemembers and contractors in Iraq. And all three cases are based on the same fundamental set of allegations against MTN Group: that it invested in an Iranian telecommunications company, MTN Irancell ("Irancell"), whose profits from a mobile phone network allegedly benefitted companies with covert ties to Iran's Islamic Revolutionary Guard Corps ("IRGC"). The overlap between the three complaints is so substantial that 136 paragraphs in *Davis* and 120 in *Chand* are lifted verbatim from the Amended Complaint in *Zobay*. Many more paragraphs in the *Davis* and *Chand* complaints are substantively identical to paragraphs in the Amended Complaint in *Zobay* but with minor wording changes.

1

Plaintiffs are entitled to sympathy for their injuries and tragic losses. But their counsel should not be permitted to engage in transparent forum-shopping. Having already filed essentially the same case in the Eastern District of New York, where the presiding judge has already invested time and attention on two versions of their now 506-page complaint, Plaintiffs' counsel should logically have filed these two related cases in the Eastern District of New York as well. None of the events alleged in the *Davis* and *Chand* complaints have any connection whatsoever to the District of Columbia—in fact, more Plaintiffs in *Davis* and *Chand* reside in the Eastern District of New York (and still more in New York generally) than in the District of Columbia. The only explanation for filing these two new lawsuits in this District are forum-shopping and gamesmanship—Plaintiffs' counsel want extra bites at the apple in attempting to state, and ultimately prove, ATA claims based on the same allegations.

This Court need not and should not condone this tactic. The factors that courts traditionally consider when deciding a motion to transfer venue under 28 U.S.C. § 1404(a) strongly support transferring these related cases. Permitting Plaintiffs' counsel to press forward simultaneously with materially identical cases in both the Eastern District of New York and this District would encourage the "wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Transfer should be granted.

## BACKGROUND

### A.    The Anti-Terrorism Act

The ATA creates a civil cause of action for treble damages for U.S. nationals who are injured "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). As originally enacted, the ATA authorized plaintiffs to sue only those persons who themselves directly committed an act of international terrorism. *See Gonzalez v. Google LLC*, 2 F.4th 871, 901 (9th Cir. 2021). To state

a direct liability claim under the ATA, plaintiffs must allege that the defendant committed an act of "international terrorism," meaning that the defendant's own actions occurred primarily outside the United States, were violent or dangerous to human life, would have constituted a crime if committed within the United States, and "appear[ed] to be intended to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. §§ 2333(a), 2331(1). Plaintiffs asserting a direct liability claim under the ATA also must establish that the defendant's actions proximately caused the plaintiffs' injuries. *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 94–95 (2d Cir. 2013).

In 2016, Congress amended the ATA to add a new provision, 18 U.S.C. § 2333(d)(2), which allows plaintiffs in limited circumstances to bring an ATA claim against a "person who aids and abets . . . or who conspires with the person who committed" an act of international terrorism that injured the plaintiff. *See* Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 4, 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)(2)). Congress limited these secondary liability claims to acts of international terrorism that are "committed, planned, or authorized" by an organization that the United States has designated as a foreign terrorist organization ("FTO"). 18 U.S.C. § 2333(d)(2). Thus, to state a secondary liability claim under the ATA, a plaintiff must allege that they were injured by an act of international terrorism "committed, planned, or authorized" by a designated FTO, and that the defendant either "conspire[d] with" or "aid[ed] and abet[ted], by knowingly providing substantial assistance" to, the "person who committed" that act of international terrorism. *Id.*

B.      *Zobay v. MTN Grp. Ltd.* **(E.D.N.Y.)**

In June 2021, the law firm Sparacino PLLC filed an ATA action against MTN Group, its affiliate, MTN Dubai, and Irancell in the U.S. District Court for the Eastern District of New York. The Eastern District of New York assigned that case—captioned *Zobay v. MTN Group Ltd.*, No. 1:21-cv-03503—to Judge Carol Bagley Amon. The plaintiffs in *Zobay* are U.S. servicemembers and contractors who were injured or killed in attacks in Iraq and Afghanistan between 2011 and 2019, or their family members. *See* Ex. A at 19 (Am. Compl. ¶ 1, *Zobay v. MTN Grp. Ltd.*, No. 1:21-cv-03503 (E.D.N.Y. Feb. 9, 2022), ECF 52 ("*Zobay* Am. Compl.")).[1] The *Zobay* plaintiffs have alleged that their injuries were committed by either Shia or Sunni militia groups that received financial and other support from the government of Iran through the Qods Force branch of the IRGC and the Lebanese terrorist organization Hezbollah. *Id.* at 20–21 (*Zobay* Am. Compl. ¶¶ 8, 11). The precise circumstances surrounding each attack differ, but the *Zobay* plaintiffs all claim that MTN Group's business operations in Iran and Afghanistan contributed to the attacks that injured them. *Id.* at 21 (*Zobay* Am. Compl. ¶ 11).

The allegations in *Zobay* center on MTN Group's indirect investment in Irancell, a telecommunications joint venture that aimed to build Iran's second-ever mobile phone network. MTN Group, a South African company and one of the leading providers of mobile telecommunications and network services in emerging markets, serves a diverse range of countries in Africa, the Middle East, and South Asia. In 2005, one of MTN Group's subsidiaries—MTN International (Mauritius) Ltd.—acquired a minority, non-controlling stake in Irancell. *Id.* at 311, 319–320 (*Zobay* Am. Compl. ¶¶ 940, 959). According to the *Zobay* plaintiffs, MTN Group

---

[1] A copy of the *Zobay* Amended Complaint is attached as Exhibit A to this Motion.

invested in Irancell's new network because Iran's underdeveloped mobile telecommunications sector offered a "unique" and "important" growth opportunity for investors. *Id.* at 270, 349 (*Zobay* Am. Compl. ¶¶ 824, 1032) (citation omitted). As the parent of the "junior partner," however, MTN Group was "not in charge" of Irancell; Plaintiffs allege that "all decision-making authority" was held by the Iranian majority shareholders. *Id.* at 37, 311 (*Zobay* Am. Compl. ¶¶ 72, 940).

The *Zobay* plaintiffs nevertheless claim that MTN Group's indirect investment in Irancell helped cause attacks on U.S. forces in Iraq and Afghanistan. Plaintiffs' theory is that the two companies that together held the majority share in Irancell—Bonyad Mostazafan and Iran Electronics Industries—were two of the many companies and organizations that the IRGC used to invest covertly in different sectors of the Iranian economy. These entities were not sanctioned for connections to the IRGC or terrorism during the relevant period and, at the time of MTN Group's investment, were not subject to any U.S. sanctions at all. But the *Zobay* plaintiffs allege that MTN Group should have known that the IRGC would benefit indirectly from Irancell's profits and equipment, and that it would in turn use the Qods Force and Hezbollah to support anti-American militias in Iraq and Afghanistan. *Id.* at 20–21, 26–27 (*Zobay* Am. Compl. ¶¶ 8, 11, 34–35).

Plaintiffs also attempt to allege that, in order to win the original Irancell bid away from a competitor (Turkcell), MTN Group agreed to support the IRGC's campaign to use terrorist violence to drive the United States from the Middle East and South Asia. *Id.* at 308, 310 (*Zobay* Am. Compl. ¶¶ 931–932, 936). Plaintiffs base this assertion on a 2005 Letter Agreement between "MTN" and the Iranian shareholders in Irancell. *Id.* at 308 (*Zobay* Am. Compl. ¶ 932). That letter spelled out the commercial terms of the joint venture and never referenced the IRGC or terrorism. *See id.* at 311–314 (*Zobay* Am. Compl. ¶¶ 940–945); *Chand* Dkt. 8-1 (Compl., Ex. A, *Chand v. MTN Irancell Telecomms. Servs. Co.*, No. 1:22-cv-0830 (D.D.C. Apr. 6, 2022)) (attaching the

2005 Letter Agreement, which plaintiffs in all three cases incorporated into their complaints). But plaintiffs claim the letter actually was a secret pledge to support the IRGC's terrorist agenda, which they infer from "indicia" such as "the reference to God at the start of the Agreement" and "the inclusion of the Islamic calendar date." Ex. A at 311–312 (*Zobay* Am. Compl. ¶ 941).

The *Zobay* plaintiffs also allege that MTN Group contributed to attacks in Afghanistan by permitting its subsidiary in Afghanistan, MTN Afghanistan, to make protection payments to the Taliban. Plaintiffs allege that the Taliban threatened to attack mobile phone companies operating in Afghanistan unless the companies agreed to pay the Taliban and shut down their cell towers when the Taliban demanded it. *See id.* at 353, 361 (*Zobay* Am. Compl. ¶¶ 1041, 1058) (citation omitted). Plaintiffs allege that MTN Group authorized MTN Afghanistan to comply with these extortionist demands in order to protect its equipment and personnel from attack. *Id.*[2]

In their original complaint, the *Zobay* plaintiffs asserted two sets of claims against MTN Group under the ATA. *See* Ex. B at 177–183 (Compl. ¶¶ 588–613*, Zobay v. MTN Group Ltd.*, No. 1:21-cv-03503 (E.D.N.Y. June 22, 2021), ECF 1 ("*Zobay* Compl.")).[3] First, they claimed that MTN Group directly committed acts of international terrorism by providing material support and financing to the IRGC. *See id.* at 177–181 (*Zobay* Compl. ¶¶ 588–602). Second, they claimed that

_____

[2] The law firm Sparacino PLLC made similar allegations concerning MTN Afghanistan in a fourth ATA case, which is pending in this District. *See Cabrera v. Black & Veatch Special Projects Corp.*, No. 1:19-cv-03833 (D.D.C.). A magistrate judge has recommended that the district judge presiding over *Cabrera* dismiss the claims against MTN Group, MTN (Dubai) Ltd., and MTN Afghanistan. *See* Report & Recommendation, *Cabrera*, No. 1:19-cv-03833 (D.D.C. July 30, 2021), ECF 142.

    The allegations against MTN Group in *Cabrera* concerned only Afghanistan and the Taliban, and did not involve Iran, Irancell, or attacks in Iraq. As a result, while *Davis* and *Chand* overlap completely with *Zobay*, only a small portion of their allegations overlap with *Cabrera*.

[3] A copy of the original *Zobay* Complaint is attached as Exhibit B to this Motion.

MTN Group aided and abetted the acts of international terrorism that injured them. *See id.* at 181–183 (*Zobay* Compl. ¶¶ 603–613).

When the court convened a conference in *Zobay* to consider MTN Group's request for leave to file a motion to dismiss (as required by that court's local rules), Judge Amon expressed skepticism about the *Zobay* plaintiffs' claims, focusing in particular on their direct liability theory. Judge Amon asked plaintiffs' counsel how plaintiffs could have a direct (also referred to as "primary") liability claim on the facts alleged:

> THE COURT: Okay. I had one other question -- well, how do you have a primary claim? I can understand what at least you allege your theory is about secondary liability, but how do you have a primary claim?

Ex. C at 11 (Tr. Pre-Motion Conf. 10:20–23, *Zobay*, No. 1:21-cv-03503 (E.D.N.Y. Nov. 30, 2021) ("*Zobay* Tr.")).[4] Judge Amon then asked whether plaintiffs were serious about pursuing that claim:

> THE COURT: And are you pursuing -- are you seriously pursuing a primary claim? We don't need to brief things that you're not serious about.

*Id.* at 11–12 (*Zobay* Tr. 10:25–11:2). Plaintiffs' counsel assured Judge Amon that they were "very serious about [their] primary liability claim." *Id.* at 12 (*Zobay* Tr. 11:3–4).

But after MTN Group served a motion explaining why that claim failed, plaintiffs' counsel amended their complaint. They kept their allegations materially unchanged, but dropped the direct liability claims. In their place, and in addition to their aiding-and-abetting claims, the *Zobay* plaintiffs now claimed that MTN Group conspired with the persons who committed the acts of international terrorism that injured them. Ex. A at 495–505 (*Zobay* Am. Compl. ¶¶ 1589–1631).

---

[4] A copy of the transcript from the pre-motion conference is attached as Exhibit C.

After convening a second pre-motion conference, Judge Amon granted MTN Group permission to file a new motion to dismiss the Amended Complaint in *Zobay*. That motion, which MTN Group served on April 25, 2022, argues that the court should dismiss the Amended Complaint because MTN Group, which has no U.S. operations, is not subject to personal jurisdiction in the United States with respect to claims that relate to alleged conduct that occurred entirely in Iran and Afghanistan. The motion also argues that, despite repeatedly mischaracterizing their own sources, the *Zobay* plaintiffs fail to state any ATA claim. Alleging that MTN Group invested in a mobile phone network in Iran, whose other indirect shareholders had some covert affiliation with the IRGC, does not plausibly plead that MTN Group conspired with or aided and abetted the IRGC, let alone the specific terrorist groups that actually committed the various attacks that injured plaintiffs in Iraq and Afghanistan. And alleging that the Taliban violently extorted MTN Afghanistan does not establish that MTN Group knowingly provided substantial assistance to any attack on U.S. forces in Afghanistan. Plaintiffs' opposition is due June 9, 2022, the reply is due July 11, 2022, and oral argument is scheduled for August 11, 2022.[5]

### C.    *Davis v. MTN Irancell* and *Chand v. MTN Irancell* (D.D.C.)

On March 27, 2022, weeks after amending in *Zobay*, the law firm Sparacino PLLC filed these two new cases in this District on behalf of different plaintiffs. The precise attacks at issue,

---

[5] The *Zobay* plaintiffs have also asserted ATA claims against various ZTE and Huawei companies, alleging primarily that they separately supported the IRGC.

and thus the plaintiffs in each case, differ.[6] And the *Davis* and *Chand* Plaintiffs also assert only the direct liability claims that their counsel previously dropped from *Zobay.*

But the underlying theory and factual allegations are the same across the three cases. Indeed, the factual allegations in *Davis* and *Chand* are largely carbon copies of the Amended Complaint in *Zobay*: 136 paragraphs in the *Davis* complaint and 120 paragraphs in the *Chand* complaint are lifted verbatim from the Amended Complaint in *Zobay*, and still more are materially identical to paragraphs in *Zobay*, with only minor semantic differences. *Compare, e.g., Davis* Dkt. 1 at 43–45 (Compl. ¶¶ 38–43, *Davis*, No. 1:22-cv-0829 (D.D.C. Mar. 27, 2022), ECF 1 ("*Davis* Compl.")), *and Chand* Dkt. 8 at 28–30 (Compl. ¶¶ 38–43, *Chand*, No. 1:22-cv-00830 (D.D.C. Apr. 6, 2022) ("*Chand* Compl.")), *with* Ex. A at 28–30 (*Zobay* Am. Compl. ¶¶ 43–48).

Plaintiffs in all three cases allege that, in order to secure its investment in Irancell, MTN Group pledged in the 2005 Letter Agreement to support the IRGC's global terrorist agenda. *Compare Davis* Dkt. 1 at 164–166 (*Davis* Compl. ¶¶ 444–446), *and Chand* Dkt. 8 at 137–139 (*Chand* Compl. ¶¶ 399–401), *with* Ex. A at 311–313 (*Zobay* Am. Compl. ¶¶ 941–943). They allege that the IRGC benefited (albeit indirectly) from the profits Irancell earned from its mobile phone subscribers and the telecommunications equipment Irancell procured, because two indirect shareholders in Irancell—Bonyad Mostazafan and Iran Electronic Industries—were commercial "fronts" for the IRGC. *Compare Davis* Dkt. 1 at 138, 141 (*Davis* Compl. ¶¶ 338, 349–350), *with*

---

[6] The *Davis* Plaintiffs' injuries relate to attacks allegedly committed by Sunni militants in Iraq and Afghanistan between 2006 and 2010. The *Chand* Plaintiffs allege they were injured in attacks committed by Shia militants in Iraq between 2005 and 2009.

Plaintiffs also name Phuthuma Nhleko and Irene Charnley as defendants in *Davis* and *Chand*. Neither was sued in *Zobay*. But both are sued based exclusively on their alleged actions as MTN Group executives.

*Chand* Dkt. 8 at 111, 114 (*Chand* Compl ¶¶ 293, 304–305), *with* Ex. A at 255, 261 (*Zobay* Am. Compl. ¶¶ 773, 791–792). They allege that the IRGC used the Qods Force and Hezbollah to support terrorist attacks against American interests in the Middle East and South Asia. *Compare Davis* Dkt. 1 at 76–77 (*Davis* Compl. ¶¶ 134–136), *and Chand* Dkt. 8 at 59–61 (*Chand* Compl. ¶¶ 133–135), *with* Ex. A at 44–45 (*Zobay* Am. Compl. ¶¶ 97–99). They allege that Hezbollah and Qods Force operatives sometimes took part in "joint cells" of Shia militias that carried out attacks on U.S. forces in Iraq. *Compare Chand* Dkt. 8 at 68 (*Chand* Compl. ¶¶ 155–157), *with* Ex. A at 101–102 (*Zobay* Am. Compl. ¶¶ 285–287). And they allege that, in other instances, Hezbollah and the Qods Force served as a liaison or conduit for the flow of support from Iran to Sunni militia groups operating in Iraq and Afghanistan. *Compare Davis* Dkt. 1 at 79–80 (*Davis* Compl. ¶¶ 143–145), *with* Ex. A at 95–97 (*Zobay* Am. Compl. ¶¶ 267, 270–273). Finally, like the plaintiffs in *Zobay*, the *Davis* and *Chand* Plaintiffs try to establish personal jurisdiction over MTN Group in the United States by alleging that "agents" of some "MTN" entity wired money through the New York financial system and procured U.S.-origin telecommunications equipment for Irancell. *Compare Davis* Dkt. 1 at 233, 236 (*Davis* Compl. ¶¶ 628, 639), *and Chand* Dkt. 8 at 205, 208 (*Chand* Compl. ¶¶ 580, 591), *with* Ex. A at 377, 380 (*Zobay* Am. Compl. ¶¶ 1104, 1115).

On April 29, 2022, the MTN Defendants waived service and made their first appearance in both *Davis* and *Chand*. *See Davis* Dkt. 8, 10–16; *Chand* Dkt. 9–16. Because Plaintiffs had not designated *Davis* and *Chand* as related at the time of filing, the MTN Defendants "immediately" filed a Notice of Related Case on both dockets to notify the Court pursuant to Local Civil Rule 40.5(b)(3) that the cases "involve common issues of fact." LCvR 40.5(a)(3). *See Davis* Dkt. 17 (Notice of Related Case, *Davis*, No. 1:22-cv-00829 (D.D.C. May 2, 2022)); *Chand* Dkt. 18 (Notice of Related Case, *Chand*, No. 1:22-cv-00830 (D.D.C. May 2, 2022)). Though Plaintiffs filed an

objection to the related case notice in *Davis*, the Court agreed that *Davis* and *Chand* are related because they "involve common issues of fact." Minute Order, *Davis*, No. 1:22-cv-00829 (D.D.C. May 13, 2022). "[G]iven the extensive, verbatim overlap between the complaints in the two cases and the similar allegations against the same Defendants in each case," the Court concluded that "judicial economy would be served by having these matters resolved by the same judge." *Id.* (citation omitted).

On May 26, 2022, immediately prior to filing this Motion to Transfer Venue, the MTN Defendants filed motions to dismiss the complaints in both *Davis* and *Chand*.

## ARGUMENT

The Court should transfer *Davis* and *Chand* to the Eastern District of New York so that they can proceed in an efficient manner alongside *Zobay*. A district court may, "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). To the extent the MTN Defendants can be sued anywhere in the United States (a point the MTN Defendants strongly reject), both of these cases could and should have been brought in the Eastern District of New York, where the *Davis* and *Chand* Plaintiffs' counsel are already litigating a materially identical case under the same statute, against the same principal defendant, based on the same allegations of conduct by that defendant. But when the judge presiding over that case expressed doubt about counsel's claim that MTN Group is directly liable under the ATA—and MTN Group filed a motion to dismiss explaining why that skepticism was warranted—counsel went forum shopping. They dropped their direct liability claims in that court and refiled them in this one—on behalf of new plaintiffs, to be sure, but making the exact same allegations. That sort of naked forum shopping should not be tolerated. The factors that courts consider when deciding whether to transfer a civil

action under § 1404(a) strongly favor transfer here, and the Court should exercise its discretion to

send these cases to the court where closely related litigation is already pending.

## I.     These Cases Could Have Been Brought in the Eastern District of New York to the Same Extent That They Can Be Brought in This District.

Under 28 U.S.C. § 1404(a), the Court may transfer a civil action to any district "where it

might have been brought." "The ATA's special venue provision, 18 U.S.C. § 2334, allows for a

suit under that statute to be brought in any district where any plaintiff resides." *Burnett v. Al Baraka*

*Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 98 (D.D.C. 2003). In both *Davis* and *Chand*, at least one

plaintiff resides in the Eastern District of New York—one in *Davis* and six in *Chand*.[7] The Eastern

District of New York is therefore a proper venue for both cases. *See* 18 U.S.C. § 2334(a) (venue

is proper in any district where "any plaintiff resides"). Thus, *Davis* and *Chand* "might have been

brought" in the Eastern District of New York for purposes of § 1404(a).

Ordinarily, transfer pursuant to § 1404(a) also requires a showing that personal jurisdiction

is proper in the transferee court, for the simple reason that a case cannot properly be transferred

---

[7] The *Davis* Plaintiff residing in the Eastern District of New York is John M. Finley. The *Chand* Plaintiffs residing in the Eastern District of New York are Armando Fuentes, Daniel Jonathan Fuentes, Julio Fuentes, Nancy Fuentes, Tatyana Fuentes, and Emma McGarry.

The *Davis* Plaintiffs filed their list of addresses under seal. *See Davis* Dkt. 9 (Plaintiff Names and Addresses, *Davis*, No. 1:22-cv-00829 (D.D.C. Apr. 29, 2022)) (under seal). The *Chand* Plaintiffs have not disclosed their addresses in any docketed filing. *See Chand* Dkt. 7 (Order, *Chand*, No. 1:22-cv-00830 (D.D.C. Apr. 7, 2022)) (granting plaintiffs' ex parte motion to file a complaint without their addresses). But Plaintiffs' counsel provided the MTN Defendants with a list of the *Chand* Plaintiffs' addresses in connection with the MTN Defendants' agreement to waive service. *See Chand* Dkt. 17 at 2–3 (Stipulation and Order ¶ 3, *Chand*, No. 1:22-cv-00830 (D.D.C. Apr. 29, 2022)).

The Court's orders approving the parties' stipulations regarding waiver of service in *Davis* and *Chand* expressly permit the MTN Defendants to "include . . . in court filings . . . information concerning the judicial district or districts in which Plaintiffs reside." *Id.*; *Davis* Dkt. 18 at 2–3 (Stipulation and Order ¶ 3, *Davis*, No. 1:22-cv-00829 (D.D.C. May 3, 2022)).

from a court *with* jurisdiction to one *without* jurisdiction. *See Virts v. Prudential Life Ins. Co. of Am.*, 950 F. Supp. 2d 101, 104 (D.D.C. 2013). Questions of personal jurisdiction are irrelevant to this motion, however, because Plaintiffs claim that the MTN Defendants are equally subject to personal jurisdiction in *both* the Eastern District of New York and this District, while the MTN Defendants maintain that courts in both districts are equally lacking personal jurisdiction. Courts have recognized that where a "plaintiff's theory of personal jurisdiction . . . would apply equally" to the transferor and transferee districts, then plaintiffs "could have brought" the action in the transferee district for purposes of 28 U.S.C. § 1404(a). *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020); *see also Orbital Australia Pty Ltd v. Daimler AG*, 2015 WL 4042178, at *2 (E.D. Va. July 1, 2015) ("And while MBUSI contests personal jurisdiction in Virginia, Plaintiffs' theory of personal jurisdiction—the theory upon which the suit was commenced in the Eastern District of Virginia—would seem to apply equally in the Eastern District of Michigan. If the Plaintiff could have brought the claim here, then the Plaintiff could have brought the claim there. Thus, if personal jurisdiction is proper in the Eastern District of Virginia—a question this Court need not, and does not, reach—then personal jurisdiction would have been proper in the Eastern District of Michigan.").

In the Eastern District of New York, MTN Group has moved to dismiss *Zobay* for lack of personal jurisdiction, and just before filing this motion, the MTN Defendants moved to dismiss *Davis* and *Chand* on the same grounds.[8] Specifically, the plaintiffs in all three cases contend that

---

[8] The MTN Defendants filed their motions to dismiss immediately before filing the present Motion to Transfer Venue to leave absolutely no doubt that in filing this transfer motion, they are asserting and not waiving their objection to personal jurisdiction. However, for the reasons explained here, the question whether to transfer these cases does not depend on the merits of the personal jurisdiction question. The MTN Defendants suggest that the Court first address their transfer motion, which if granted would obviate the need for this Court to rule on the motion to dismiss.

their respective courts have personal jurisdiction over MTN Group (and the other foreign defendants) under Federal Rule of Civil Procedure 4(k)(2). *See* Ex. A at 40 (*Zobay* Am. Compl. ¶ 83); *Davis* Dkt. 1 at 50 (*Davis* Compl. ¶ 61); *Chand* Dkt. 8 at 35 (*Chand* Compl. ¶ 60). Because MTN Group does not operate in the United States, Rule 4(k)(2) acts as a federal long-arm statute requiring that "exercising jurisdiction [be] consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B). To be consistent with the Constitution, the exercise of jurisdiction must "comport[] with the limits imposed by federal due process," *Walden v. Fiore,* 571 U.S. 277, 283 (2014) (citation omitted), considering the foreign defendants' contacts with the United States as a whole, *see Livnat v. Palestinian Auth.*, 851 F.3d 45, 54–55 (D.C. Cir. 2017); *Dardana Ltd. v. A.O. Yuganskneftegaz,* 317 F.3d 202, 207 (2d Cir. 2003). The jurisdictional inquiry in all three cases is thus identical: because the question is whether defendants had sufficient contacts with the United States as a whole, rather than with a particular state or district, MTN Group either is subject to personal jurisdiction with respect to these ATA claims in both the Eastern District of New York *and* this District, or it is not subject to personal jurisdiction in either district. In such circumstances, a defendant's objection to personal jurisdiction in both the transferor and transferee districts is not an impediment to transfer.

## II.    Transfer to the Eastern District of New York Is in the Interest of Justice and Would Serve the Convenience of the Parties and Witnesses.

A district court has "broad discretion" to decide whether "consideration[s] of convenience and fairness" support transferring a civil action to another district. *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006); *see also Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009) (district courts have "broad discretion in determining whether transfer is warranted" under § 1404(a)). In determining whether to transfer an action under § 1404(a), courts engage in an "individualized, case-by-case consideration of convenience and fairness." *Onyeneho*,

466 F. Supp. 2d at 3. In making this inquiry, courts weigh case-specific factors "related to both the public and private interests at stake." *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31 (D.D.C. 2013). The public-interest factors include (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the courts' calendars; and (3) the local interest in having local controversies decided at home. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). The private-interest factors include (1) the plaintiff's choice of forum; (2) the defendants' choice of forum; (3) where the claims arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Id.*

All of these factors weigh heavily in favor of transferring these cases, particularly because an earlier-filed, materially identical case is already pending in the Eastern District of New York. Transfer in this instance would advance the core purpose of § 1404(a), which "was designed to prevent" "the wastefulness of time, energy and money" that arises where "two cases involving precisely the same issues are simultaneously pending in different District Courts." *Cont'l Grain*, 364 U.S. at 26; *see also Blechman*, 668 F. Supp. 2d at 403 ("The goal of Section 1404(a) 'is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" (citation omitted)).

A.      **The Interest of Justice Heavily Favors Transfer Because There Is a Materially Identical Case Pending in the Eastern District of New York.**

In analyzing the efficiency and interest of justice factors, the existence of similar litigation in the transferee district can be dispositive. *See Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring [a] case is the presence of closely related litigation."); *Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("[T]he fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a)."); *Cain v. Twitter, Inc.*,

2017 WL 1489220, at *3 (S.D.N.Y. Apr. 25, 2017) (noting, in the context of a successful motion to transfer an ATA case, that the existence of similar litigation in the transferee district can be "decisive"); *Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231, 235 (E.D.N.Y. 1994) ("Related litigation pending in the proposed transferee forum is a factor that weighs heavily in favor of transfer."); *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) ("[T]he existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" (citation omitted)).

As a result, courts routinely transfer actions to districts where similar litigation is pending, even where there is not a complete identity of parties. For example, in *Barham*, UBS Financial Services moved to transfer an employment discrimination claim from this District to the District of Maryland, where UBS was already defending similar claims brought by other employees. 496 F. Supp. 2d at 177–80. The court granted the transfer, noting that "the most significant factor weighing in favor of transferring th[e] case is the presence of closely related litigation in the District of Maryland": the plaintiffs in both cases had worked in the same UBS office, their complaints overlapped substantially, and they were represented by the same counsel. *See id.* at 180; *see also, e.g.*, *Calif. Farm Bureau Fed'n v. Badgley*, 2005 WL 1532718, at *2–3 (D.D.C. June 29, 2005) (granting defendant's motion to transfer to another district where they were defending similar claims brought by different plaintiffs because "[a]llowing the[] two suits to proceed unconsolidated in separate districts would 'lead[] to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent'" (citation omitted)); *Harris Cty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) ("Complete identity of neither the parties nor of the lawsuit itself is required for dismissal or transfer of a case filed subsequently to an action with substantial overlap of substantive issues."); *Lihuan Wang v. Phoenix Satellite Television US,*

*Inc.*, 2014 WL 116220, at *3 (S.D.N.Y. Jan. 13, 2014) ("Complete identity of all parties is not a necessity" for a transfer under § 1404(a), "as long as the suits involve common issues of law or fact."); *Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, 2017 WL 6760811, at *3 & n.3 (S.D. Fla. Oct. 4, 2017) (transferring action to district where different plaintiffs had sued the defendants based on the same allegations, even where other factors did not weigh in favor of the transfer).

Transfer is warranted here based on the existence of the indisputably similar case pending in the Eastern District of New York. The *Zobay* plaintiffs allege that they were injured in attacks on U.S. servicemembers and contractors in Iraq and Afghanistan, which they attribute to Shia and Sunni fighters allegedly supported by the IRGC and Hezbollah. *See* Ex. A at 19, 36–37, 466, 490 (Zobay Am. Compl. ¶¶ 1, 69, 1393, 1553). And they claim that MTN Group is liable for those injuries because it invested in, and supplied telecommunications equipment to, Irancell, and because the Taliban extorted money from MTN Afghanistan by threatening to attack its equipment and personnel. *See id.* at 303–366 (*Zobay* Am. Compl. ¶¶ 911–1068).

There is no doubt that *Davis* and *Chand* are based on substantially the same allegations—large portions of the *Davis* and *Chand* complaints simply copy and paste the allegations in *Zobay*. This time, counsel divided the attacks across two cases: putting attacks by Sunni militants into *Davis* and those by Shia militants into *Chand*. *See Davis* Dkt. 1 at 48–49, 346–347, 449 (*Davis* Compl. ¶¶ 55, 946–947, 1902–1903); *Chand* Dkt. 8 at 33–34, 283 (*Chand* Compl. ¶¶ 54, 784). But the core allegations, copied and pasted from *Zobay*, remain the same: Plaintiffs again allege that MTN Group's investment in Irancell and the Taliban's protection racket in Afghanistan enabled terrorist attacks in Iraq and Afghanistan. *Compare* Ex. A at 303–366 (*Zobay* Am. Compl. ¶¶ 911–1068), *with Davis* Dkt. 1 at 159–223 (*Davis* Compl. ¶¶ 426–593), *and Chand* Dkt. 8 at 132–195 (*Chand* Compl. ¶¶ 381–545). All three cases thus "hinge upon the same factual nuclei." *Coultman*,

17

857 F. Supp. at 235; *id.* at 235–36 ("Transfer is particularly appropriate where, as here, 'there is a pending lawsuit in the transferee district involving the same facts, transactions, or occurrences.'" (citation omitted)).

The issues that will need to be decided in each action will thus be substantially duplicative at each stage. At the motion-to-dismiss stage, MTN Group has asserted similar defenses in *Zobay*, *Davis*, and *Chand*. As a result, all three cases present the same jurisdictional question: Is MTN Group subject to specific jurisdiction in the United States, either because it expressly aimed its alleged acts in Iran and Afghanistan at the United States, or because it has sufficient contacts with the United States and plaintiffs' ATA claims arise from or relate to those contacts? With respect to the ATA claims themselves, each motion asks whether MTN Group, by investing in Irancell and allegedly supplying it with equipment, knowingly supported acts of terrorism.[9] If the actions were to proceed past these motions to discovery, the parties would have to explore largely

---

[9] Though the legal claims currently at issue in *Davis* and *Chand* (ATA direct liability) and *Zobay* (ATA conspiracy and aiding and abetting liability) are not identical, the issues in the cases remain overwhelmingly common, due to similarities in the claims' elements and the factual theory common to all three cases. For example, whether the plaintiffs' common allegations are sufficient to allege that MTN Group knew that, by investing in Irancell, it was supporting the IRGC's efforts to support attacks in Iraq and Afghanistan could bear on whether MTN Group knowingly supported or financed terrorism (an issue in *Davis* and *Chand*) and whether it was generally aware it was playing a role in terrorism (an issue in *Zobay*).

Of course, *Zobay* also began as a direct liability case before Plaintiffs' counsel changed the causes of action originally pled. Plaintiffs in *Davis* and *Chand* have indicated that they also intend to amend their complaints. *Davis* Dkt. 19 at 7 (Objection to Defendants' Notice of Related Case, *Davis*, No. 1:22-cv-00829 (D.D.C. May 6, 2022) ("Plaintiffs' Objection")). In doing so, it appears they may plan to add or substitute secondary liability claims, eliminating the last bit of daylight between these cases and *Zobay*. In their objection to the related case notice, Plaintiffs indicated that they hope to rely on a D.C. Circuit decision that concerned the ATA's limitation of secondary liability claims to acts of international terrorism "committed, planned, or authorized" by a designated FTO—a limitation that does not apply to direct liability claims. *See id.* at 6. *Compare* 18 U.S.C. § 2333(d)(2) (secondary liability claims), *with id.* § 2333(a) (direct liability claims).

overlapping factual issues and would likely confront the same complex discovery questions. For example, plaintiffs in all three cases would no doubt demand the same discovery from MTN Group regarding its investment in Iran. And if the actions proceeded to trial, the plaintiffs in all three cases would need to prove similar facts about MTN Group, Irancell, the IRGC, and Hezbollah. The common factual issues would include the circumstances of MTN's investment in Irancell; the facts surrounding the 2005 Letter Agreement that is central to the plaintiffs' theory in all three cases; the alleged connections between Irancell's indirect Iranian shareholders and the IRGC; MTN Group's knowledge (or lack thereof) of those alleged connections; the nexus (or lack thereof) between the telecommunications equipment supplied to Irancell and the terrorist attacks in Iraq and Afghanistan; and the relationship between the IRGC, the Qods Force, and Hezbollah.

There is no value in burdening two courts with the task of addressing the same issues, arising from the same allegations brought by the same counsel against the same defendant. In fact, allowing the three cases to proceed in different districts would risk not just duplicative litigation but also inconsistent rulings—the precise dangers against which § 1404(a) is designed to guard. *See, e.g.*, *Defenders of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 86 (D.D.C. 2014) ("an over-arching consideration" in deciding whether to transfer an action to a district where a related case is already pending "is the 'compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments),' which weighs heavily in a court's transfer analysis" (citation omitted)); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000) (deciding the "compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments) warranted transfer of venue" to where "[r]elated litigation" was already pending); *Badgley*, 2005 WL 1532718, at *2 ("Not only would discovery, motions practice, and trial be duplicated, but there would be a significant risk that this court and the [transferee] court would issue inconsistent orders

subjecting [the defendant] to inconsistent obligations. Such considerations weigh heavily in favor of transfer."); *Lihuan Wang*, 2014 WL 116220, at *3 ("When multiple claims are brought in different forums, there is a strong policy in this Circuit favoring the litigation of related claims in the same tribunal in order to avoid duplicitous litigation and inconsistent results."); Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) (Westlaw) (the "interest of justice" in "avoid[ing] multiplicity of litigation resulting from a single transaction or event" and the risk of "inconsistent" judgments should be given "great weight[]" and can be "decisive," "even when the other statutory factors of convenience of the parties and witnesses point in a different direction").

The "interest of justice" thus strongly favors transferring *Davis* and *Chand* to the Eastern District of New York. Plaintiffs' counsel chose to file their first of three nearly identical cases in that district and did so nearly a year ago, in June 2021. As a result, the judge presiding over that action, who was already familiar with the ATA from prior cases,[10] has already reviewed two extraordinarily lengthy complaints, held two conferences where the parties discussed their arguments and addressed questions on those arguments from the judge, ordered briefing on two motions to dismiss, and scheduled oral argument on the latest motion. The presiding judge is therefore familiar with the common issues presented by these cases. *See, e.g.*, *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 358 F. Supp. 3d 1, 9–10 (D.D.C. 2019) (transferee court's familiarity with the relevant legal issues and facts weighs in favor of transfer). At the same time, the *Zobay* litigation remains at an early enough stage that transfer of *Davis* and *Chand* in the near future would reap the greatest possible gains in judicial efficiency and economy. Following

---

[10] Judge Amon has presided over an ATA suit against a group of Lebanese banks that allegedly provided financial services to Hezbollah. *See Bartlett v. Societe Generale de Banque Au Liban SAL*, No. 19-cv-00007 (E.D.N.Y.).

transfer, the MTN Defendants are prepared to move forward with their motions to dismiss *Davis* and *Chand* expeditiously, and believe that these motions could be decided alongside the currently pending motion to dismiss in *Zobay*.

**B.      This Case Has No Significant Ties to the District of Columbia — and, According to the Complaints Themselves, Greater Ties to New York.**

The absence of any meaningful connection between these cases and this District also strongly supports transfer. Plaintiffs' claims do not arise out of, and indeed have no alleged factual connection to, the District of Columbia. As a result, there is no local interest in litigating these claims in this District and no reason to believe any witnesses or evidence is located here. By contrast, New York features in Plaintiffs' attempted jurisdictional allegations. And given that both Plaintiffs' counsel and MTN Group are already litigating *Zobay* in the Eastern District of New York, that district would be a far more convenient forum in which to continue these two cases.

**Convenience of the parties.** The only connection between *Davis* and *Chand* and this District is that three of the 868 Plaintiffs reside in the District of Columbia.[11] The remaining 865 Plaintiffs are scattered across the country (with more than 21 in New York and seven specifically in the Eastern District of New York). As a result, there is no reason to believe that it would be more convenient for Plaintiffs to litigate *Davis* and *Chand* in this District rather than in the Eastern District of New York. *See Martinez v. Deutsche Bank AG*, 2017 WL 1366048, at *4 (S.D. Ill. Apr. 12, 2017) (rejecting argument that it would be more convenient for plaintiffs to litigate an ATA case in an Illinois district court, rather than in New York where similar litigation was already pending, when the plaintiffs were citizens of many states and only three resided in Illinois).

---

[11] The three (of 868) Plaintiffs who reside in D.C. are Todd Littmann Schulte (*Davis*) and Robert Neiberger and James J. Connolly (*Chand*). This count is derived from the list of addresses provided by Plaintiffs' counsel. *See* note 7, *supra*.

Plaintiffs' other ties to New York only reinforce that the Eastern District of New York is as convenient, or more convenient, a forum for Plaintiffs to litigate these cases. Plaintiffs are represented by the same counsel that is already litigating *Zobay* in the Eastern District of New York. And at least 19 of the Plaintiffs—including one of the three D.C. residents—have litigated, or are currently litigating, ATA claims in the Eastern and Southern Districts of New York accusing other defendants of having caused their same injuries. *See Martinez v. Deutsche Bank AG*, No. 1:17-cv-02474 (E.D.N.Y.); *Neiberger v. Deutsche Bank AG*, No. 1:19-cv-03005 (S.D.N.Y.).[12]

By contrast, it would be inconvenient and inefficient to require MTN Group to litigate *Davis* and *Chand* in this District. MTN Group is already litigating the same issues, concerning the same alleged conduct, brought by the same counsel in *Zobay*. To now require MTN Group to repeat that exercise indefinitely in a second court would be duplicative and wasteful. The balance of convenience for the parties thus weighs heavily in favor of transfer.

**Where the claims arose, convenience of witnesses, and ease of access to sources of proof.** Apart from the three (of 868) Plaintiffs that reside in the District, there is no reason to believe that any witnesses or sources of evidence are located here, because "*none* of the alleged relevant conduct specifically occurred" in this District. *Martinez*, 2017 WL 1366048, at *4.

Conversely, Plaintiffs in these two cases (like the plaintiffs in *Zobay*) allege that their claims relate to "business" that MTN Group supposedly does "in New York." *Davis* Dkt. 1 at 50–51 (*Davis* Compl. ¶ 63); *Chand* Dkt. 8 at 35 (*Chand* Compl. ¶ 62); Ex. A at 40 (*Zobay* Am. Compl. ¶ 85). Plaintiffs in all three cases allege that "MTN" or its "agents" routed "millions of dollars" "through the New York banking system" as part of an effort to secure telecommunications

---

[12] The 19 Plaintiffs are from the Neiberger, Reeves, and Stephens families.

equipment for Irancell. *Davis* Dkt. 1 at 236 (*Davis* Compl. ¶ 639); *Chand* Dkt. 8 at 208 (*Chand* Compl. ¶ 591); Ex. A at 380 (*Zobay* Am. Compl. ¶ 1115). And they all allege that "MTN Group relied upon bank accounts in New York to complete [a] $400,000 wire" to bribe an Iranian government official to secure its investment in Irancell. *Davis* Dkt. 1 at 233 (*Davis* Compl. ¶ 628); *Chand* Dkt. 8 at 205 (*Chand* Compl. ¶ 580); Ex. A at 377 (*Zobay* Am. Compl. ¶ 1104).

The MTN Defendants dispute that these allegations, even if true, support personal jurisdiction in any court in the United States. As MTN Group has explained in each of its motions to dismiss, these allegations are not sufficient to establish specific personal jurisdiction over MTN Group with respect to these ATA claims, or to even state any ATA claim in the first instance. For example, Plaintiffs fail to allege that MTN Group controlled any of these supposed "agents." And these incidental alleged contacts with New York's banking system in any event neither establish purposeful availment nor relate to the plaintiffs' ATA claims. *See, e.g.*, *Chand* Dkt. 20-1 at 18–37 (Mem. Supp. Mot. to Dismiss § I.A, *Chand*, No. 1:22-cv-000830 (D.D.C. May 26, 2022)).

But based on *Plaintiffs' own* view of these cases, their New York-related allegations only reinforce that the Eastern District of New York is the appropriate forum to hear these cases. Plaintiffs' own allegations indicate that in their view, "[t]he Eastern District of New York has an undeniably stronger relationship to th[is] controversy" than this District (though in reality there is no meaningful connection between the allegations against MTN Group and the United States at all). *See Martinez*, 2017 WL 1366048, at *5. "[T]he conduct that allegedly gives rise to the plaintiffs' cause of action is almost identical to the alleged conduct at issue in the [*Zobay*] case." *Id.* And plaintiffs in all three cases have alleged that they believe conduct (i.e., financial transactions) relevant to their claims occurred in New York—not in this District. *See, e.g.*, *id.* (transfer to E.D.N.Y. was warranted, even though three plaintiffs resided in Illinois, because

23

E.D.N.Y. had a "stronger relationship" to the controversy and was already presiding over similar ATA litigation); *Tower Labs., Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018) (courts deciding a § 1404(a) motion should consider whether there is a "nexus between the underlying transactions giving rise to the claim and the forum selected"). Finally, given the alleged ties to the New York financial system, if any U.S. forum had an interest in deciding this dispute, it would be New York, not the District of Columbia. *See, e.g.*, *Barham*, 496 F. Supp. 2d at 181 (fact that transferee forum was the "locus of the allegedly unlawful actions undertaken by defendant" supported transfer (citation omitted)).

### C. Plaintiffs' Choice of Venue Should be Afforded No Deference in Light of the Tiny Fraction of Plaintiffs Who Reside in D.C. and Plaintiffs' Counsel's Transparent Forum Shopping.

Ordinarily, courts give some deference to a plaintiff's choice of forum when deciding a motion to transfer venue. As an initial matter, though, that deference is greatly diminished where, as here, vanishingly few of the plaintiffs in a mass action reside in this District and this forum has no connection to the parties' dispute. *See, e.g.*, *Holland*, 360 F. Supp. 2d at 76 ("this deference is mitigated here because 'the connection between the controversy, the plaintiff, and the chosen forum is attenuated'" (citation omitted)); *Debellis v. Soloman*, 2019 WL 4393652, at *1 (E.D.N.Y. Sept. 13, 2019) ("the emphasis that a court places on plaintiff's choice of forum diminishes where the facts giving rise to the litigation bear little material connection to the chosen forum" (citation omitted)); *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 778–79 (N.D. Cal. 2015) ("plaintiff's choice of forum . . . must be afforded less deference" because "the majority of the named plaintiffs do not reside in this district, rendering their choice of forum less significant," and "very few of the operative facts occurred" here). Indeed, because "[t]he plaintiff's choice of forum, the District of

Columbia, has no meaningful ties to or interest in this suit[,] . . . this court must be especially cautious in allowing this case to remain in the District of Columbia." *Trout*, 944 F. Supp. at 17.

In this case, the Court should give the Plaintiffs' choice of forum no weight at all given their counsel's blatant forum shopping. Congress intended for the transfer provisions to prevent forum shopping. *See Schmid Labs., Inc. v. Hartford Acc. & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986). Thus, "[w]here it appears that the plaintiff [is] forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 349 (E.D.N.Y. 2012) (citation omitted).

Plaintiffs' counsel has, in effect, split one case into three in the hope of getting two extra bites at the apple. In *Zobay*, plaintiffs included direct liability ATA claims in their first complaint—alleging that MTN Group itself had committed acts of international terrorism by investing in and supplying Irancell. Ex. B at 177–181 (*Zobay* Compl. ¶¶ 588–602). But when Judge Amon convened a pre-motion conference, she questioned the viability of plaintiffs' direct liability claims. *See* Ex. C at 11–12 (*Zobay* Tr. 10:20–11:2). Plaintiffs' counsel assured Judge Amon that they were "very serious about [their] primary liability claim." *Id.* at 12 (*Zobay* Tr. 11:3–4). But when MTN Group served its motion to dismiss, explaining why that claim was not viable, counsel dropped those claims from *Zobay* and instead alleged only that MTN Group aided and abetted or conspired with the persons who committed the acts of international terrorism that injured the plaintiffs. *See* Ex. A at 495–505 (*Zobay* Am. Compl. ¶¶ 1589–1631). Plaintiffs' counsel then transplanted the direct liability claims into this District. And to maximize their chances of getting at least one favorable ruling on the motions to dismiss, Plaintiffs' counsel filed two complaints—so similar that hundreds of paragraphs are verbatim or near-verbatim copies of each other and of *Zobay*—

that raise the same direct liability claims using the same underlying allegations, and then denied that the two cases are even related to each other. *See Davis* Dkt. 19 (Plaintiffs' Objection).

It is not "in the interest of justice to encourage, or even allow," Plaintiffs or their counsel to try to shop between forums "to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled." *Schmid Labs.*, 654 F. Supp. at 737. Yet that is precisely what Plaintiffs' counsel has attempted in these cases. This sort of opportunistic forum shopping should not be rewarded, particularly not where the remaining considerations that inform whether a case should be transferred under § 1404(a) weigh so heavily in favor of transfer.

## CONCLUSION

For the foregoing reasons, the MTN Defendants respectfully request that the Court transfer these related actions to the United States District Court for the Eastern District of New York.

Dated:  May 26, 2022                           Respectfully submitted,


/s/ *David M. Zionts*                          /s/ *Timothy P. Harkness*

David M. Zionts (D.C. Bar No. 995170)          Timothy P. Harkness (D.D.C. Bar No. NY 0331)
Jordan L. Moran (D.C. Bar No. 888273537)       Kimberly H. Zelnick (D.D.C. Bar No. NY 0325)
Michael S. Goudey (D.C. Bar No. 1617698)*      Scott A. Eisman (D.D.C. Bar No. NY 0326)
Covington & Burling LLP                        Freshfields Bruckhaus Deringer US LLP
One CityCenter                                 601 Lexington Avenue, 31st Floor
850 Tenth Street, NW                           New York, NY 10022
Washington, DC 20001                           Tel: (212) 277-4000
Tel: (202) 662-6000                            timothy.harkness@freshfields.com
dzionts@cov.com                                kimberly.zelnick@freshfields.com
jmoran@cov.com                                 scott.eisman@freshfields.com
mgoudey@cov.com


Benjamin S. Haley (D.C. Bar No. 500103)
Covington & Burling (Pty) Ltd.
Rosebank Link
173 Oxford Road, 7th Floor
Johannesburg 2196, South Africa
Tel: +27 (11) 944-6914
bhaley@cov.com


*Application for admission forthcoming.           *Counsel for Defendants MTN Group Limited,
                                                  Phuthuma Nhleko, and Irene Charnley*