UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALLY CHAND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> Defendants. | Case No. 1:22-cv-00830-RDM <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully offer this response to the MTN Defendants' notice of supplemental authority (ECF 39) regarding *Keren Kayemeth LeIsrael–Jewish National Fund v. Education for a Just Peace in the Middle East*, No. 21-7097, 2023 WL 3184625 (D.C. Cir. May 2, 2023), affirming the dismissal of Anti-Terrorism Act (ATA) claims against an educational charity. *Keren Kayemeth* bears no meaningful resemblance to this case and does not support dismissal here.

*Keren Kayemeth* involved allegations that the defendant, a non-profit that was doing business as U.S. Campaign for Palestinian Rights ("USCPR"), provided material support to Hamas by making donations to "the Boycott National Committee, which was formed in 2005 to coordinate the efforts of various Palestinian political parties, unions, associations, and other organizations to boycott[ ] Israel ... economically, academically[,] and diplomatically." 2023 WL 3184625, at *1. The plaintiffs' complex theory of liability posited that: (i) Hamas was a member of both the Boycott National Committee and another organization known as the Palestinian National and Islamic Forces ("PNIF"), a "coordinating framework" for Palestinian groups, including some with

1

terrorist ties; (ii) the PNIF had a representative on, and shared personnel with, the Boycott National Committee; and (iii) defendant USCPR's donations to the Committee therefore aided Hamas "and/or others" in committing certain terrorist attacks. *Id*. at *2. This Court dismissed the plaintiffs' claims for both direct and secondary liability under the ATA, and the D.C. Circuit affirmed.

Defendants claim that *Keren Kayemeth* supports dismissal here for two reasons: first, that it undermines Plaintiffs' allegations that MTN Irancell and its Iranian owners are fronts for the Islamic Revolutionary Guard Corps (IRGC), and second, that it undermines Plaintiffs' allegations that Defendants' assistance to those fronts proximately caused Plaintiffs' injuries. Defendants are wrong on both counts.

***First***, the "front" allegations rejected as inadequate in *Keren Kayemeth* bear no resemblance to the allegations here. In fact, the complaint in *Keren Kayemeth* contained no "front" allegation at all: the plaintiffs first raised the "direct front" allegation "at oral argument" in the Court of Appeals. 2023 WL 3184625, at *2.[1] In any case, the Court of Appeals found that the plaintiffs' belated allegation—based largely on overlapping membership in political advocacy groups that included, but were not controlled by, terrorist groups—amounted to "nothing more than guilt by association" and fell "far short of establishing that the Boycott National Committee is an extension of Hamas or has been taken over by Hamas." *Id*. at *4.

The contrast with Plaintiffs' allegations about MTN Irancell and its majority owners, Bonyad Mostazafan and IEI (operating as the joint venture IEDC), is striking. Defendants' claim

---

[1] A review of the complaint in *Keren Kayemeth* confirms that it contains no allegations that the Committee was a "front" of any kind, never mind a "direct front" for Hamas. *See* Compl., *Keren Kayemeth LeIsrael–Jewish National Fund v. Education for a Just Peace in the Middle East,* No. 1:19-cv-03425 (D.D.C. Nov. 13, 2019), ECF 1.

2

that Plaintiffs' front allegations are "conclusory," "unsupported," and "contradicted by" the fact that those entities were not given some official terrorism-related designation is wrong on every count. Plaintiffs have pointed to myriad third-party sources describing all three companies as fronts for, or controlled by, the IRGC. *See* ECF 27 at 4-5; ECF 1 at ¶¶776-78, 785, 794-97, 802, 1025-27, 1111, 1327-28.[2] The suggestion that an entity cannot be a terrorist front without formal designation by the U.S. government is foreclosed by *Atchley*, in which the Court of Appeals found the Iraqi Ministry of Health to be "a front for Jaysh al-Mahdi" even though the U.S. government had not designated either the Iraqi Ministry of Health (the alleged terrorist front) or Jaysh al-Mahdi (the terrorist group behind the front that allegedly committed the attacks). *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).

In addition, unlike the *Keren Kayemeth* plaintiffs, Plaintiffs here have explained in detail how MTN Irancell flowed assistance to IRGC terrorists, including by importing embargoed "encryption technologies that IRGC's Hezbollah Division and Qods Force used to secure their communications against American surveillance and untraceable smartphones that their operatives used to construct and trigger IEDs and explosively formed penetrators ("EFPs") in terrorist attacks." ECF 27 at 9 (citing ¶¶528-29); *see also* ¶389. Plaintiffs also allege the specific nature and amount of other assistance that flowed through Irancell to the IRGC, including "free goods" bribery, ECF 27 at 13, and cash in the form of IEDC's 51% share of the profits generated by the highly lucrative venture, *id.*, the latter of which generated $4.2 *billion* for the IRGC from 2005 through 2013. *See* ¶¶42, 507-09. *Keren Kayemeth* involved no similar allegations.

**Second**, unlike the *Keren Kayemeth* plaintiffs, Plaintiffs here extensively allege that Defendants' assistance to the IRGC proximately caused Plaintiffs' injuries. In *Keren Kayemeth*,

---

[2] Unless otherwise indicated, paragraph symbols refer to paragraphs of the Complaint (ECF 1).

3

the plaintiffs failed even to adequately allege that Hamas committed the attacks that injured them. 2023 WL 3184625, at *4; thus, even if the plaintiffs had plausibly alleged that the Boycott National Committee was a Hamas front, assistance to the Committee could not have caused the attack or the resulting injuries. *Id*. Defendants' notice does not argue that Plaintiffs failed to allege that IRGC was responsible for Plaintiffs' injuries, making the *Keren Kayemeth* ruling irrelevant here.

In any event, Plaintiffs' causation allegations are straightforward. Defendants provided the IRGC with embargoed dual-use communications equipment and massive amounts of cash, both of which it used to fund and equip terrorist attacks on Americans. *E.g.*, ¶¶528-29 (MTN provided encryption equipment to IRGC operatives to defeat American surveillance and smartphones used to trigger improvised explosive devices), ¶¶42, 49, 507-08 (Defendants provided the IRGC with hundreds of millions of dollars annually that IRGC used to fund terrorist operations). Plaintiffs also allege that Defendants cooperated with terrorist requests to shut down cellular towers in to facilitate terrorist attacks. ¶¶570-85. These allegations are sufficient to plead that Defendants' actions were "a substantial factor in the sequence of events that led to their injuries" and that "those injuries were reasonably foreseeable or anticipated as a natural consequence of [defendants'] conduct," and that is all proximate causation requires. *Atchley*, 22 F.4th at 226.

Dated: May 30, 2023  

Respectfully submitted,

*/s/ Eli J. Kay-Oliphant*

Eli J. Kay-Oliphant (DC Bar No. 503235)
Ryan R. Sparacino (DC Bar No. 493700)
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
eli.kay-oliphant@sparacinopllc.com
ryan.sparacino@sparacinopllc.com

*Counsel for Plaintiffs*