**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SALLY CHAND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> Defendants. | Case No. 1:22-cv-00830-RDM <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully submit this notice of supplemental authority regarding the recent decision in *Sotloff v. Qatar Charity*, 2023 WL 3721683 (S.D. Fla. May 30, 2023) (Attachment A). *Sotloff* provides additional persuasive support for Plaintiffs' primary liability claims.

In *Sotloff*, family members of an American journalist murdered by ISIS militants brought an Anti-Terrorism Act action against Qatari entities that allegedly wired $800,000 to one Fadhel al-Salim "so that he could found a militant brigade, join ISIS, and destabilize Syria by committing acts of terror." 2023 WL 3721683, at *1. Ten months later, al-Salim—by then an ISIS judge—sentenced Sotloff to death.  A week later, he was beheaded by other ISIS terrorists. *Id*. at *2-3.

Sotloff's family and estate brought multiple ATA claims against the defendants, including a primary liability claim under 18 U.S.C. §2333(a).  The defendants moved to dismiss, arguing—as MTN argues here—that "they did not commit an 'act of international terrorism' by funding al-Salim," because "financially supporting a terrorist organization" cannot constitute an act "dangerous to human life" as required by the statutory definition of "international terrorism" in 18 U.S.C. §2331(1). *Sotloff*, 2023 WL 3721683, at *27.

1

The district court disagreed and denied the motion to dismiss. With respect to the "act of international terrorism" issue, it adopted the Seventh Circuit's view that "financially supporting a known terrorist organization is an 'act dangerous to human life' because it is 'like giving a loaded gun to a child.'" *Id*. (quoting *Boim v. Holy Land Found. for Relief and Dev.,* 549 F.3d 685, 690 (7th Cir. 2008) (en banc)). In reaching that conclusion, it joined the large majority of courts, including this one, holding that "giving material support to a terrorist group" can, in appropriate circumstances, be "dangerous to human life" for purposes of 18 U.S.C. §2331(1). *In re Terrorist Attacks of September 11, 2001*, 2022 WL 4227151, at *21 (S.D.N.Y. May 3, 2022) (report and recommendation); *see Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 43-44 (D.D.C. 2010) ("intentionally and knowingly provid[ing] financial services to an agent" of terrorist actors constitutes an "act dangerous to human life").[1]

---

[1] *See also, e.g., Schansman v. Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 416 (S.D.N.Y. 2021) (act of international terrorism adequately pled where plaintiffs alleged that defendants "provided financial services to fundraisers and individuals who … provided the funds to the [terrorists] before and after the attack" that injured the plaintiffs); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 45-46 (E.D.N.Y. 2019) (act of international terrorism adequately pled where plaintiffs alleged that defendant bank knowingly administered an insurance fund that paid families of terrorists "martyred" in terrorist operations and "rout[ed] payments [to] and maintain[ed] accounts for terrorists and terrorist organizations"); *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019) (Iranian bank committed an "act of international terrorism" by providing over $50 million to Hezbollah over a five-year period and thereby "facilitating the Hezbollah rocket attack that killed" the plaintiffs' family member); *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1315-16 (S.D. Fla. 2018) (act of international terrorism adequately pled where plaintiffs alleged that defendant "continuously paid substantial sums of money to the [terrorist group] FARC over a nine-year time span, knowing before and during that time of the FARC's notoriety for extreme violence, its antagonism toward U.S. interests in Colombia, and its targeting of U.S. nationals for ransom kidnappings and murder"); *Stansell v. BGP, Inc.*, No. 8:09–cv–2501–T–30AEP, 2011 WL 1296881, at *2-3, 6-7 (M.D. Fla. March 31, 2011) (act "dangerous to human life" adequately pled where plaintiffs alleged that defendants provided "monetary payments and various supplies and services" to FARC terrorist group "in exchange for the FARC's agreement to allow Defendants to conduct its oil exploration activities without fear of terrorist acts"); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 416, 427 (E.D.N.Y. 2009) (act of international terrorism adequately pled where plaintiffs alleged that defendant bank provided financial services to known Hamas funder).

As *Sotloff* suggests, the cases assessing whether financial support can constitute an "act of international terrorism" fall along a spectrum: while providing "routine financial services" to terrorist fundraisers or supporters *may* not be an act "dangerous to human life" (although whether services are "routine" is a jury question), "directly sending money" to such persons "falls squarely within *Boim*"—that is, such conduct is akin to giving a loaded gun to a child, if the "child" were a violent terrorist. *Sotloff*, 2023 WL 3721683, at *28; *see also, e.g., Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19-cv-0007, 2020 WL 7089448, at *7 (E.D.N.Y. Nov. 25, 2020) (noting that "[c]ases involving conduct alleged to be 'dangerous to human life' can be arranged along a spectrum involving more or less dangerous behavior," with "directly donating funds" to terrorist groups at one extreme and "provid[ing] [banking] services to customers engaged in principally legitimate businesses … who may have a connection to terrorism" on the other); *In re Terrorist Attacks of September 11, 2001*, 2022 WL 4227151, at *21 ("The degree to which giving material support to a terrorist group is dangerous to human life depends on the nature and scale of the support.")

Like the allegations in *Sotloff*, Plaintiffs' allegations here fall squarely on the *Boim* side of the spectrum. Plaintiffs allege that MTN funneled billions of dollars to known IRGC fronts and effected a scheme to illegally provide those fronts with dual-use technology that "which then flowed through [IRGC's] Hezbollah Division and Qods Force to al-Qaeda, al-Qaeda-in-Iraq, and Ansar al-Islam, for use by them in Iraq … enabling them to … spy on Americans, avoid detection, clandestinely communicate, travel freely, and build and detonate more effective bombs." ECF 25 at 45 (quoting ECF 1 ¶51). These are not the kinds of "routine services" that some courts have found are not "dangerous to human life." At a minimum, Plaintiffs' allegations raise a factual dispute that a jury should be allowed to decide. *Sotloff*, 2023 WL 3721683, at *28 (stating that

"whether [defendant's] actions constitute 'routine financial services' is a question of fact better left to be assessed at later stages of this case").[2]

Dated: June 28, 2023

Respectfully submitted,

/s/ Eli J. Kay-Oliphant

Eli J. Kay-Oliphant (DC Bar No. 503235)
Ryan R. Sparacino (DC Bar No. 493700)
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
eli.kay-oliphant@sparacinopllc.com
ryan.sparacino@sparacinopllc.com

*Counsel for Plaintiffs*

---

[2] *See also, e.g., Linde v. Arab Bank PLC*, 882 F.3d 314, 327 (2d Cir. 2018) (holding that whether the defendant bank's "financial services to Hamas should not be viewed as routine … raises questions of fact for a jury to decide"); *Schansman,* 565 F. Supp. 3d at 415 (same); *Miller*, 372 F. Supp. 3d at 46 (same).