UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALLY CHAND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTN IRANCELL TELECOMMUNICATIONS SERVICES COMPANY, *et al.*, <br><br> *Defendants*. | Case No.: 1:22-cv-00830-RDM |

**RESPONSE OF MTN DEFENDANTS TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs' Notice of Supplemental Authority (Dkt. 42) argues that the recent Second Circuit decision *Spetner v. Palestine Investment Bank*, __ F. 4th __, 2023 WL 4035924 (2d Cir. June 16, 2023), supports personal jurisdiction over the claims against MTN Group Limited, Phuthuma Nhleko, and Irene Charnley (the "MTN Defendants"). In fact, *Spetner* highlights the weaknesses of Plaintiffs' jurisdictional allegations.

The *Spetner* plaintiffs are American victims, or their relatives and estates, of 13 terrorist attacks in Israel between 2001 and 2003. They brought Anti-Terrorism Act ("ATA") claims against Palestine Investment Bank ("PIB"), a commercial bank headquartered in the Palestinian Territories. They alleged that PIB facilitated the attacks by knowingly providing financial services to the Arab Liberation Front ("ALF") and Hamas, the terrorist organizations that allegedly perpetrated the attacks. Plaintiffs argued that PIB was subject to personal jurisdiction because it engaged in correspondent banking transactions in New York through its agent Arab Jordan Investment Bank ("AJIB"). The Second Circuit agreed, because the plaintiffs adequately alleged facts showing that PIB deliberately chose to bank in New York in order to help carry out its ATA violations. That holding highlights what is missing from Plaintiffs' Complaint here.

**Relatedness**. *Spetner* confirms that Plaintiffs' claims do not arise from or relate to the MTN Defendants' alleged U.S. contacts. The touchstone of the Second Circuit's analysis was whether PIB's conduct in New York was an "instrument to achieve the very wrong alleged." 2023 WL 4035924, at *8 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013)). In *Spetner*, it was: Saddam Hussein's regime in Iraq transferred up to $35 million to a PIB account, held by the head of ALF, as part of an incentive-payment program to reward terrorist attacks. *Id.* at *1. The head of ALF withdrew these funds and sent dollar-denominated checks—primarily issued by PIB—to the families of deceased terrorists, sometimes with the word "martyr" on the memo line. *Id.* at *2. PIB also instructed Hamas's U.S.-based fundraising arm on how to wire dollars to its account; those dollars were then used to finance Hamas's operations. *Id.* at *1–2. Because PIB "provid[ed] material support to a customer linked to Hamas" by knowingly using its agents' New York bank accounts to process payments that "b[ore] indicia of terrorism financing," PIB's New York transactions were "integral to the wrongful conduct" underpinning plaintiffs' claims. *Id.* at *6, *8.

Unlike in *Spetner*, there is no allegation that the MTN Defendants' alleged procurement of smartphones, servers, and other technical equipment, *see* Dkt. 42 at 2–3, bore indicia of terrorism financing or were integral to the attacks that injured Plaintiffs. To the contrary, Plaintiffs concede that Irancell, a mobile phone network serving millions of Iranians, had "significant legitimate operations," Dkt. 25 at 53, and they specifically allege non-terrorist reasons for procuring that equipment: "[t]he U.S. products had performed well in [MTN Group's] other networks, and the company's technicians were familiar with them," Dkt. 8 at 156 (Compl. ¶ 444). Plaintiffs likewise fail to allege how an alleged $400,000 bribe paid to secure a spot in a joint venture to run that network, *see* Dkt. 42 at 4, was an "instrument to achieve" or otherwise connected to attacks in Iraq

two years prior or two years later. *Spetner*, 2023 WL 4035924, at *8.

The most analogous precedent here is not the Second Circuit's decision in *Spetner*, but the D.C. Circuit's decision in *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022), which refutes Plaintiffs' characterization of their claims as "aris[ing] from" the MTN Defendants' acquisition of "embargoed technology." Dkt. 42 at 4. Allegations of "sanctions evasion" benefitting entities with "legitimate operations" are not enough to plead relatedness, even if those entities are also linked to terrorists. *Bernhardt*, 47 F.4th at 864–66; *see also* Dkt. 32.

**Purposeful Availment.** *Spetner*'s purposeful-availment analysis independently supports dismissal.

*Agency. Spetner* confirms that, for an agency-based theory, plaintiffs must allege that the "agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." 2023 WL 4035924, at *4 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)). The *Spetner* plaintiffs alleged facts showing that PIB had knowledge of AJIB's in-forum activities—e.g., that PIB knew from AJIB's advertisements in trade publications that AJIB could process dollar-denominated accounts only through New York. *Id.* at *2, *4. They also alleged that PIB repeatedly accepted incoming dollar-denominated payments from AJIB, which suggested PIB's consent that "AJIB act on its behalf" in effecting transfers through AJIB's correspondent accounts in New York. *Id.* at *4. And because PIB did not advertise AJIB's correspondent accounts in New York, PIB's customers would have known to send funds to those accounts only if PIB directed them to do so. *Id.* at *5.

Plaintiffs here fail to plead the existence of a similar agency relationship for three separate reasons. *First*, unlike in *Spetner*, Plaintiffs here fail to identify who the principal was. *See* Dkt. 20-1 at 31–34; Dkt. 28 at 16–17. *Second*, Plaintiffs have not plausibly alleged the identity of any agent

3

who was directed by some principal to act in the United States. *See* Dkt. 20-1 at 34–36; Dkt. 28 at 17–18. *Third*, Plaintiffs offer only conclusory allegations that MTN Group had an agency relationship with any purported agent with U.S. contacts, *see* Dkt. 20-1 at 34–36—in contrast to the "facts" that the *Spetner* plaintiffs averred, the copies of PIB-issued checks sent from ALF to families of terrorists, and receipt vouchers that the *Spetner* plaintiffs attached to their amended complaint, 2023 WL 4035924, at *6.

*U.S. Financial System. Spetner* recognizes that jurisdiction requires "a choice by the defendant bank to avail itself of the benefits of the New York financial system." 2023 WL 4035924, at *6. "Simply transacting in U.S. dollars" is not enough. *Id.*

The *Spetner* plaintiffs alleged more than PIB transacting in U.S. dollars. They alleged that PIB—itself a bank—sought "indirect access" to New York's financial system, "exercised control [over AJIB] by utilizing AJIB's correspondent bank accounts in New York," and repeatedly accepted incoming dollar-denominated payments that may have totaled up to $35 million. *Id.* at *1, *5. Here, Plaintiffs concede that "the[ir] complaint nowhere mentions 'correspondent accounts,'" Dkt. 25 at 32 n.5. They simply argue that by "alleg[ing] [U.S.] dollar payments," the complaint "support[s] an inference that Defendants utilized the U.S. financial system." Dkt. 25 at 33. That is exactly what *Spetner* rejects.

Dated: June 30, 2023

Respectfully submitted,

/s/ *David M. Zionts*
David M. Zionts (D.C. Bar No. 995170)
Covington & Burling LLP
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Telephone: (202) 662-5987
Facsimile: (202) 778-5987
dzionts@cov.com

Benjamin S. Haley (D.C. Bar No. 500103)
Covington & Burling (Pty) Ltd.
Rosebank Link
173 Oxford Road, 7th Floor
Johannesburg 2196, South Africa
Telephone: +27 (11) 944-6914
bhaley@cov.com

/s/ *Timothy P. Harkness*
Timothy P. Harkness (D.D.C. Bar No. NY 0331)
Kimberly H. Zelnick (D.D.C. Bar No. NY 0325)
Scott A. Eisman (D.D.C. Bar No. NY 0326)
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
timothy.harkness@freshfields.com
kimberly.zelnick@freshfields.com
scott.eisman@freshfields.com

*Counsel for MTN Defendants*